Fifth Circuit Court of Appeals. We have three cases to be submitted today on oral argument. We'll hear the first two and then take a short recess and then hear the third case. And we begin with United States v. Mecham. Mr. Martin. May it please the Court, my name is Scott Martin, I represent Clifford Mecham. In the District Court, Mr. Mecham was charged in an indictment with knowingly possessing material that contained an image of child pornography as defined in Section 2256.8c of Title 18, which is a visual depiction created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct. This is commonly known as morphed child pornography. The particular image of child pornography that was charged in the indictment and for which he was ultimately convicted was an eight-minute video in which the face of his five-year-old granddaughter had been digitally superimposed onto the body of an adult female actor engaged in various sex acts. He did not distribute that image. On appeal, he raises two issues. First, is the federal ban on possession of morphed child pornography unconstitutional as applied to the conduct for which he was convicted? Second, at sentencing, did the District Court reversibly err when it imposed a four-level sadism enhancement under Guidelines Section 2G2.2 without applying the legal standard set forth by this Court in U.S. v. Nesmith? Your Honors, on the constitutional question, the threshold issue this Court must address is do morphed images like these fall within the child pornography class of speech that under New York v. Ferber is categorically unprotected? The answer is no. This Court should follow the Eighth Circuit's opinion in Anderson and hold that where as here no child was sexually abused in the production of the images and thus the images are not speech integral to criminal conduct, the images remain protected, but . . . Why was this defendant . . . I mean, this is a question more appropriate for the government, but I'll ask you as well. Why was the defendant in this case not charged with distribution, or why was it limited to this one depiction? Your Honor, again, that's a good question for the government. That was their charging decision, and that's part of my argument in the strict scrutiny analysis is that there are other statutes that prohibit distribution and production with intent to distribute. He did admit that he distributed one image, not this image. It was an image that he distributed to his adult daughter using her 16-year-old face, but he did not distribute this image, and for our purposes, this is the only image that matters to the constitutional analysis. In Anderson, the defendant superimposed a child's face over an adult female engaged in sexually explicit activity and sent it to her on Facebook. The court in that case, the Eighth Circuit, held that the morphed image did not fall within the child pornography class of unprotected speech because no child was sexually abused in the production of the image. Applying Stevens and its clarification of Ferber, which I've cited at my brief at page 19 and also in my reply brief at pages 3 to 4, the Eighth Circuit defined the category of unprotected speech as speech integral to criminal conduct, namely the sexual abuse of minors inherent in the production of child pornography. Now, our argument is that this is correct. This interpretation is faithful to Stevens and its interpretation of Ferber and the First Amendment and that to fall within this category, in essence, the materials produced must create a record, a permanent record, or a record at least, of an actual child's participation in sexually explicit activity. In Stevens, that's because the court clarified a few things, that number one, that Ferber grounded its analysis in a long established category of unprotected speech and that is speech used as an integral part of conduct in violation of a valid criminal statute. Stevens said that Ferber presented a special case. The market for child pornography was intrinsically related to the underlying abuse and was therefore an integral part of the production of such materials and activity illegal throughout the nation. It also clarified that Ashcroft v. Fruit Free Speech Coalition and Osborne shared this same understanding of Ferber and that Ferber and its progeny cannot be taken as establishing a freewheeling authority to declare new categories of speech outside the scope . . . Let's move on to the Sixth Circuit decision by Judge Sutton. I mean, he basically says there's three reasons why this is categorically excluded from the First Amendment. I think, one, the reputation, preventing reputational harm to the, to minors, two, he says there's very little artistic value unlike the Romeo and Juliet example in Ashcroft, and three, he says there's de minimis, if any, value to this type of speech. Well, Stevens, in his clarification of Ferber, made clear that we, that this is not about an ad hoc balancing of social interest, benefits, and interest. It needs to fit a condition for this to fall as an unprotected, into an unprotected category of speech as it must fall within this category of speech. His decision was after Stevens. You just think he, he missed that? Yes, Your Honor. He did not take into account Stevens' clarification of Ferber, which we argue is persuasive. It's the Supreme Court's recent and detailed discussion of its own precedent, so it should be given tremendous weight in this Court's analysis. Your Honor, the most direct thing the Supreme Court said about morphed child pornography was in Ashcroft, and it didn't decide the issue, but it did say the interest in protecting children is closer to real pornography in that instance, when it comes to morphed pornography. Your Honor, Stevens has since said that Ashcroft shared its same understanding of Ferber, and that Ferber grounded its analysis in this traditional category of unprotected speech. Also, Free Speech Coalition did say clearly that, quote, Ferber's judgment about child pornography was based upon how it was made, not what it communicated. The case reaffirmed that where speech is neither obscene nor the product of sexual abuse, it does not fall outside the protection of the First Amendment. And Your Honor, that's— Why isn't this speech obscene, this message, these images? Well, for starters, Your Honor, no one has argued that. The statute does not require that it meet the Miller test. There's no evidence that these pictures necessarily appeal to the prurient interest. I mean, some of them seem obscene from the descriptions in the briefing. Well, Your Honor, there's been no determination that these are obscene. Putting a little girl's face? I mean, I'm not going to get into the graphic detail. No, I understand, but Your Honor, he created these images out of anger, not out of a sexual—as he told the Court, these are an expression of his anger, not—intended to titillate people's sexual interests. So our argument would be it's not—does not fall into that category, and certainly the statute did not require that these materials meet the Miller standard. And Your Honor— On categorically, whether it's inside the First Amendment or not, does that depend on whether it's possession or distribution? No— Under strict scrutiny, you say that makes a difference. It makes—yes, you're absolutely right, it makes a difference under strict scrutiny, but Your Honor, it may make a difference, but it does not make a difference under whether it falls into this traditional, historically recognized category of unprotected speech. So you would be arguing even distribution cannot be prosecuted? I would be honored—I would be arguing that these materials are protected by the First Amendment, whether they're distributed, produced, possessed. Now let's— What about the Sixth Circuit case where it was an actual—two images of children that were morphed together, so there was a pornographic image of a child's body just put with the face of a different child? That would be—that's a different case than we have here. If it has a child's body, it may be unprotected, because in that case, you're creating a record of a child's sexual performance or the depiction of an actual child engaged in sexually explicit conduct. Your Honor, I would like to address my strict scrutiny argument, our argument is the government has failed to show that, as applies to Mr. Meacham, the ban on possession and morphed child pornography is narrowly drawn. That means actually necessary to serve the government's interest in safeguarding the physical and psychological well-being of a minor. As I mentioned, there's no evidence that Mr. Meacham ever distributed the image of child pornography charged in Account 1. A trial, he told the court he did not email it or put it on Facebook, and the government did not dispute this. He was convicted of merely possessing it. There's no evidence that this five-year child ever actually—the child whose five-year-old face was used ever actually learned of the video or what it depicted. And also, Your Honor, we've argued that the distribution or pointed out the distribution of these images in the production with intent to distribute are activities that are already 2 and 7 of Section 2252A of Title 18, and that those existing prohibitions provide less restrictive means for the government to protect a child from any kind of harm that may result from the distribution of these images, whether it's reputational or emotional harm. So the government can't meet its burden here of showing that the statute, as applied to Mr. Meacham, is narrowly tailored. Your Honors, I'd like now to address, if I may, address my sentencing argument. We argue that the court erred when it imposed a four-level sadism enhancement without applying the standard set forth in Nesmith. Nesmith was a case where this court said that an image portrays sadistic conduct if it depicts conduct that an objective observer would perceive as causing the victim in the image physical or emotional pain contemporaneously with the image's creation. But here, the PSR, which the court adopted, asserted only that the material portrayed sadistic conduct because numerous morphed images and videos include a depiction of an adult male having vaginal, anal, or oral sex with an adult female body that has a female child's face. Nowhere in the PSR was it asserted that these images were lifelike or realistic, much less that an objective observer would perceive them to be. This is significant because if an objective observer could tell by looking at these images that they are cut-and-pasted images of an adult female body that has a female child's face, as the PSR says they are, then the Nesmith standard is not satisfied. The images do not depict conduct that an objective observer would perceive as causing this child physical or emotional pain contemporaneously with the image's creation. The government, in its brief, has conceded that the bodies in the video, the bodies, the adult bodies, have breasts with a five-year-old child's face, while an objective observer would know that a five-year-old child does not have breasts, visible breasts of any kind. Also, the PSR says the video with the child's, who had the 16-year-old face that was emailed, that the male depicted in the computer animation was having an orgasm, which had cartoon liquid semen shooting into the child's mouth. Well, cartoon, we're talking about cartoon depictions here, and five-year-old faces on bodies with breasts. And as I pointed out in my brief, the district court basically avoided any application of the Nesmith standard. We're asking you to hold that the sadism enhancement does not apply, whereas here the record does not support that the images were realistic or lifelike enough to satisfy the Nesmith standard. Alternatively, this court could remand for findings on that question, but I think there's enough here to go ahead and vacate on the ground that the record doesn't support the enhancement. Unless there are any further questions, Your Honors, I'll save my time for rebuttal. Yes, you've saved time. Thank you. Thank you. Mr. Reed? Good morning, Your Honors. May it please the Court, John Reed on behalf of the United States. Your Honors, Mr. Meacham's conviction and sentence should be affirmed because his possession of— Why was he just charged in that one count when there were so many other offenses that would more likely be—would satisfy the First Amendment? Your Honor, I think the charging decision was made at the time to focus on the video depicting a 5-year-old child because she was the youngest victim and she was still a minor at the time the charge was brought. I do believe Mr. Meacham could have been charged with an additional count of distribution based on the Facebook video. That would have subjected him to a mandatory minimum sentence. The charge of possession did not subject him to a mandatory minimum. And so through prosecutorial discretion, we actually minimized his sentencing exposure. Essentially, the government was not trying to pile on. But I think we could have, but we didn't. I mean— I'm sorry, Your Honor. I mean, you may be just hoisted on your own patard here. I mean, because you've charged him in an offense that, I mean, is very arguably protected by the First Amendment when you could have charged him with something else, and just a matter of prosecutorial discretion may have just cooked your goose. Obviously, I disagree with you, Your Honor. I do not believe these images are protected speech at all. Four circuit—four sister circuits, the dicta in the Supreme Court, and numerous state courts have held that— I mean, what is the rationale for saying that this is unprotected by the First Amendment? It's the child protection rationale that justifies banning real child pornography, just as in Ferber, because while morphed images may not cause the same physical abuse as real child pornography, it still causes emotional, reputational, and psychological harm— To whom? To the victim, Your Honor. How? Because these images depict their invasion of privacy. They create a— But as far as we know, I mean, that nobody's ever seen this, right? I mean, as far as the crime charged in the indictment, he's only charged with possession. Yes. That is the same—I mean, I suppose that we have to look at this. He created these images and kept them to himself, and it never went out to the public, to the child, to the child's mother, to anybody. This specific video, I believe that's correct, but you could make this— And that's the only one we're talking about. You can make the same argument, Your Honor, about real child pornography, and the Sixth Circuit decision in Doe v. Boland specifically rejected that argument. The fact that the child did not know that these images had been created, you can look no further than this court's decision in Trawick, where a defendant secretly recorded videos of children using the bathroom. The child did not know that those images were created. The child was not abused physically at the moment those images were created. But there is still a sexual objectification of the child. As the Second Circuit said in Hodling, there is a tremendous risk that the child will suffer reputational harm. You do not have to have harm at the moment the image is created. How does that support your conviction here? Because the images are analogous. Morphed images create a permanent record of apparent sexual abuse. And if Your Honors look at this video, that will become apparent. What if, under different facts, what if Mr. Meacham was a fairly talented artist and had actually just painted the picture of the head of the granddaughter and otherwise created the same image with the photograph of the adult body? A subsection of the statute specifically creates an exception for paintings and things of that sort. So that would not be an image of a real, it would be a real identifiable child, but you would see that it was a painting. The fact that it's— I mean, that's a fair answer to the question, the way the statute is structured. Presumably the damage, the harm to the victim would be the same in either case, wouldn't it? Just that Congress has drawn that line, at least that's what you're telling us. If there were a painting? Yes. I suppose the painting could cause emotional harm, but that would be protected speech under Free Speech Coalition. That would not be a depiction of a real child engaged in sexually explicit conduct the way that we understand child pornography. I agree that it has to be a realistic portrayal, and if you look at the videos, the video itself does not depict the face on a single body. There are multiple images on the screen at any given time, there's one, two, three, four, six different images going on at one time, and there are different bodies, if you will, that the faces have been placed upon. I've looked at this video, I would encourage the court to look at the video, unfortunately, because some of the images, you cannot tell that this is not a child. Maybe it doesn't look like a five-year-old, but the stipulation of facts says the images depict someone under 12, and remember, an adult body can be 18 years old. If you put a minor's face on the body of an 18-year-old, they're going to look like a minor, and they could look like someone under 12 years old. And the fact that these images are so realistic does cause specific harm to an identifiable child. That's what the Supreme Court said in Free Speech Coalition was the important difference between morphed images and the virtual child pornography that's created solely through computer generation, computer-generated images. So again, these images do sexually exploit children. The defendant's reliance on Stevens and Anderson is misplaced because Anderson greatly overreads Stevens. And remember, Anderson affirmed the conviction and recognized that morphed images do cause harm to minors. On a distribution count. That's correct. If we followed Anderson and said it is protected speech and then we apply strict scrutiny, how do we deal with the fact that this is a possession offense? So there's a couple of answers, Your Honor. First of all, Osborne, the Supreme Court decision in Osborne, which recognized why you can ban near possession of real child pornography, those justifications apply to the morphed imagery as well, because the Supreme Court said that banning possession encourages possessors to destroy the images. That prevents those images from haunting the victim in the future, A, and B, it prevents pedophiles, sexual predators, from using such images to either seduce other children or blackmail the child who is depicted. The legislative history has congressional findings that that occurs. And the Supreme Court mentions it in Osborne as well, these images. So you are protecting not only the victim, but other children as well. The second reason that we can ban possession, sorry Your Honor, I apologize, I lost my train of thought there. Brain freeze. Why don't you talk about the enhancement? The reason, I apologize, Your Honor, I just, that's all right. The reason we can ban possession is, again, what did Mr. Meacham do here? He created these videos specifically not as private recordings of his own private fantasies. He specifically said he created these videos to make his children mad at him. It's clear that he intended these to be shared with others. So if you were to follow the Anderson line of reasoning and look at his actual conduct, right, he said he wanted to make his children mad. And so he intended to share these. He specifically threatened to distribute additional images if his family did not give in to his demands. What relevance is that if he is charged and convicted only of possession? In other words, he was not convicted of all of the motives that you are assigning to him. It's relevant, Your Honor, because punishing him does not chill his free speech. He never intended these to be private recordings of his fantasies, if you will. And also, remember, the computer repair person saw hundreds of these images. I mean, I'm having trouble, and you can be right, and maybe you can confect an argument to support what you're saying, but I don't see how you get there when he was convicted only of possession. Like, I've got it in my hand, you'll convict me because I've got it in my hand, and that's all. He did not charge me with any other kind of violation of law. I mean, as you say, there's a certain amount of due process that's involved in this thing, and if you've not charged him with this, and now you're trying to convict him of it, it sounds to me like you've got a very steep hill to climb. Your Honor, if based on child pornography is categorically unprotected speech, and the Supreme Court says you can ban mere possession, so you can make the same argument or the point that Your Honor is making about real child pornography. They both cause psychological and emotional harm to an identifiable victim. You cannot ignore the emotional harm, and that's what Anderson did when it refused to apply a categorical ban. Well, I mean, that doesn't sound correct and consistent with all the concepts of due process to me that you can convict someone for acts that he's not charged with. Well, we're not—we're convicting him based on his possession. Yeah, but I mean, how is that—it's got to be harmful to the child, is that correct? Yes. In other words, it's otherwise protected by the First Amendment, is that correct? Well, it is harmful to the child. Well, and that's—and the child, as far as this indictment and the conviction is concerned, never saw it, never even knew about it, not even charged with anything other than simple possession. Your Honor, there are countless victims who never see the child pornography, real child pornography that defendants possess. You can have a toddler or an infant, which unfortunately does occur, that child is never going to— Those people, they are convicted of distribution. No, no, Your Honor, possession. They could be convicted of possession as well. Can you say one case where simple possession of morphed— The Second Circuit in Hodling is a simple possession charge. Now, I will acknowledge that the Second Circuit in Hodling said in addition to the categorical ban, the defendant there had prepared the images to be uploaded to a website. He coded them with the HTML language, okay? So he intended to place them on the web. But our defendant, Mr. Meacham, while he didn't do that, he threatened to do that. So you've got possession plus an additional act towards distribution, if you will. Okay? And my point is only this. Criminalizing his possessions, his specific possession, even if the court were unwilling to say it's categorically unprotected, still does not chill protected speech. Why should he be able to essentially create these incredibly troubling images, weaponize them, blackmail his family, show them samples of the images, and threaten to release even more? And remember, if you're looking for harm to this particular victim, the computer repair person who tipped off the police saw hundreds of these images. At record page 11 through 12, it indicates, I apologize, I neglected to put this in my brief, but it does indicate in PSR paragraph 6, says the computer repair person apparently saw another image of the same five-year-old. He didn't see the video that was charged, but he saw apparently a different image of the five-year-old that was morphed. This victim is at risk for subsequent reputational harm. And remember, Your Honor, this is a family member, her grandfather. It seems to me incredibly unlikely she's never going to find out about this. The whole family knows these videos were created. He caused tremendous harm, emotional harm to them. I think you were going to get into, why do you disagree with his reading of Stevens and him saying that Stevens says a balancing approach isn't warranted anymore and it's all about whether you can tie it to a criminal offense? Right, yes, I apologize. So, Stevens was not a child pornography case. It was about animal crush videos. There's those few paragraphs talking about why child pornography... Absolutely, absolutely, but you have to read them in context of what was happening in the case. The government was proposing a simple balancing test to identify protected or unprotected categories of speech. And the Supreme Court said, we're not going to do that. We've not done that in other cases. For example, look at Ferber, and Ferber was grounded and it did talk about child abuse being part of the production of child pornography, certainly. But Stevens never, A, established the boundaries of the definition of child pornography. It never limited child pornography to specific instances of actual child abuse, which would be contrary to numerous cases, including this court's decision in Trawick, which says you do not have to have a specific act of child abuse in order to constitute child pornography. And Stevens did not disavow the Free Speech Coalition dicta that says morphed images are closer on the spectrum to the images that can be banned in Ferber. And the Second Circuit and the Ninth Circuit have looked at Free Speech Coalition and said this is a strong indicator that the Supreme Court believes morphed images are unprotected. So if you're going to look at Supreme Court dicta, and Free Speech Coalition and Stevens are both dicta, to my mind, the more persuasive dicta is the one that actually involved child pornography. The Seventh Circuit decision in Price, which is cited in my brief, does a good job, I think, of distinguishing the Stevens case and explaining why it does not stand for the proposition that you have to have an actual act of abuse at the moment an image is created in order for it to be unprotected child pornography. Really quickly, my time is expiring on the sentencing issue. Again, I don't know if defense counsel has looked at the video. You cannot tell that they are just simply cut and pasted. Again, I would encourage the court to look at that. Judge Jack was acutely aware of this court's holding in Nesmith. And Nesmith says you look at the image... She said she was going to give us another chance to look at it, right? Well, she said she was going to give the court a chance to look at another case, not revisit Nesmith, which of course I recognize the rule of orderliness the panel is bound by. But Judge Jack's decision is completely consistent with Nesmith, because Nesmith says you look at the video, or the image, and decide what would a reasonable objective observer perceive to be happening. A reasonable objective observer would perceive a child being sexually penetrated by an adult. That is per se sadistic according to this court's precedent in Lickman and countless others. And Judge Jack knew that. She found that the images were sadistic. This court can look at it and determine, well, did she make the right call? That's what this court did in Nesmith. The panel looked at the image and said in that case, a reasonable objective observer would not perceive the infliction of emotional pain or physical pain. So I would encourage the court to look at the video, and I think that will solve the problem there. There's no need to remand for Judge Jack to make additional findings. She made the finding that it was sadistic, and there's a legal test for that. It's similar to obscenity. The court can look at images and decide whether they are obscene after a district court has made that finding. Same thing here on the sadism enhancement. I have an argument in my brief that the enhancement is harmless as well. Judge Jack clearly knew the sentencing ranges and said she was specifically using the 35, 53, 8 factors to craft her sentence. If the images are obscene, does that make it unprotected speech? Because obscenity predated child pornography. Child pornography statutes came into existence once obscenity became difficult to prosecute. Right, and child pornography does not require obscenity. My view is they would satisfy the test for obscenity, but this court doesn't have to decide that. Obscenity does not equal child pornography necessarily, but child pornography does not require obscenity. We ask that the judgment and conviction be affirmed. Thank you. Thank you, Mr. Reed. Martin for rebuttal. Your Honors, I'd like to start first with that sentencing issue about what the judge did at sentencing. The court did avoid the issue. When defense counsel cited Nesbitt, the court informed defense counsel that the defendant in Nesbitt had posted that image on the internet, which seemed to be the most important thing in her mind at the time that this was raised. She was the judge that had been reversed in Nesbitt. And then without trying to apply the Nesbitt standard, she basically punted the issue to this court and said we're going to give the Fifth Circuit more cases to look at. My friend from the government here says that this court should look at the images and decide for itself. Our argument, that's not appropriate for a court of appeals to be making these determinations in the first instance. This court's role is to review findings of the district court for clear error. The judge in this case did not make that determination, so in essence there's nothing to review as far as her findings go. But you can look at the PSR and see what it says, which she adopted. And the PSR just asserted only that the material portrayed conduct had an adult female body that has a female child's face. It didn't say that it was lifelike or realistic. And so based on statements in this PSR and what we have from the transcript of the sentencing, this court should find that there was not enough to support the enhancement in this case and remand for resentencing without the enhancement. Your Honor, your questions to the government in their presentation tell me that you understand our position on the constitutional question. I'm here to answer any additional questions you have. If not, I'll rest on my briefs. All right. Thank you, Mr. Martin. The case is under submission. Next case, Chevron Overnight Company, LLC v. Jacobs Field Services, North America Incorporated.